UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALICIA REYNA,<br><br>  Plaintiff,<br><br>  v.<br><br>WESTROCK COMPANY, et al.,<br><br>  Defendants. | Case No. 20-cv-01666-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART; TERMINATING WESTROCK CALIFORNIA LLC'S MOTION TO DISMISS AS MOOT**<br><br>[Re: ECF 28, ECF 29] |

Plaintiff Alicia Reyna brings this putative class action against her employer WestRock Services, LLC, her employer's parent company, WestRock Company, and five of her employer's corporate affiliates for violations of California's Labor Code and Unfair Competition Law. *See* First Amended Class Action Complaint ("FAC"), ECF 25.

Before the Court are two motions: (1) Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") at ECF 28 and (2) Defendant WestRock California LLC's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 21 at ECF 29. The Court heard oral arguments on July 23, 2020 (the "Hearing"). For the reasons stated below, Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is GRANTED WITH LEAVE TO AMEND IN PART, WITHOUT LEAVE TO AMEND IN PART. WestRock California LLC's Motion to Dismiss Pursuant to Fed. R. of Civ. P. 21 is TERMINATED AS MOOT.

**I.   BACKGROUND**

The FAC provides frustratingly little background about Plaintiff, Defendants, or Plaintiff's experience as an employee. Plaintiff alleges that she is "female resident of the State of California."

1  FAC at 4 (¶ 3). She has been a non-exempt employee in Salinas, California from approximately
2  February 11, 2019 to present and her paystubs identify "WestRock Services, LLC, located at 1000
3  Abernathy Road NE, Atlanta, GA 30328" as her employer. *Id.* at 4 (¶ 3), 6-7 (¶ 14). Plaintiff alleges
4  that seven Defendants jointly employ her: (1) WestRock Services, LLC (identified as her employer
5  on her paystubs); (2) WestRock Company (the parent entity); and (3) WestRock Consumer
6  Packaging Group, LLC, WestRock MWV, LLC, WestRock California LLC, WestRock CP, LLC,
7  and WestRock Packaging Systems, LLC (affiliate entities of WestRock Services, LLC). According
8  to Plaintiff, "WestRock Group" is comprised of "WestRock Company […] and all of its
9  subsidiaries." *Id.* at 6 (¶ 13.b).[1]

10  Plaintiff seeks to represent a class of "all current and former non-exempt employees of
11  [Defendants] in the State of California at any time within the period beginning four (4) years prior
12  to the filing of this action and ending at the time this action settles or proceeds to final judgment."
13  FAC at 9 (¶ 24). She brings nine causes of action under California law: (1) Failure to Provide
14  Required Meal Periods; (2) Failure to Provide Required Rest Periods; (3) Failure to Pay Overtime
15  Wages; (4) Failure to Pay Minimum Wages; (5) Failure to Pay All Wages Due to Discharged and
16  Quitting Employees; (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate
17  Itemized Wage Statements; (8) Failure to Indemnify Employees for Necessary Expenditures
18  Incurred in Discharge of Duties; and (9) Unfair and Unlawful Business Practices. *See generally*,
19  FAC. Plaintiff also brings a representative action for civil penalties under California Private
20  Attorneys General Act of 2004 ("PAGA"). *Id.* at 23-24 (¶¶ 77-81).

21  **II.   LEGAL STANDARD**

22  "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a
23  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force*
24  *v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732
25  (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all

---

[1] In the caption of her First Amended Complaint, Plaintiff names WestRock California, Inc., but she fails to allege any claims against that entity. *See* FAC at 4-5 (¶¶ 4-10). Thus, WestRock California, Inc. is not a party to this lawsuit.

2

well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III. DISCUSSION

### A. Claims against Non-Employing Defendants

Defendants seek dismissal of all claims against WestRock Company; WestRock Consumer Packaging Group, LLC; WestRock MWV, LLC; WestRock California LLC; WestRock CP, LLC; and WestRock Packaging Systems, LLC (collectively, "Non-Employing Defendants") and argue that Plaintiff fails to allege sufficient facts to support a plausible claim that an employment relationship existed between Plaintiff and the Non-Employing Defendants. Motion at 3.

Under California law, "an employment relationship must exist in order for the California wage orders or the provisions of the Labor Code governing wages … to be applicable." *Post v. Palo/Haklar Associates*, 23 Cal. 4th 942, 947 (2000) (citing 1 Wilcox, Cal. Employment Law § 1.04[1][a], p. 1-9 (2000)). Corporate entities are presumed to have separate existences, and there is a strong presumption that a parent company is not the employer of its subsidiary's employees. *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 736 (1998) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993)).

Here, Plaintiff acknowledges that her paystubs identify her employer as WestRock Services,

3

1    LLC. FAC at 6-7 (¶ 14). This leads to a presumption that WestRock Services, LLC is Plaintiff's
2    employer. *See* Cal. Gov't Code § 12928 ("[T]here is a rebuttable presumption that 'employer,'
3    [...], includes any person or entity identified as the employer on the employee's Federal Form W-2
4    (Wage and Tax Statement)."). Thus, the task before the Court is to determine whether Plaintiff has
5    alleged sufficient facts that if true, would lead to a plausible inference that an employment
6    relationship existed between Plaintiff and the non-employing Defendants

In the FAC, Plaintiff alleges all Defendants employed her because they are all "alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint venturers, and/or guarantors, actual or ostensible, of each other." FAC at 6 (¶ 12). As for factual support of this laundry list of what appears to be every possible corporate relationship, Plaintiff alleges the following:

- All policy documents Plaintiff signed at the time she was hired refer to "WestRock" as her employer. FAC at 6 (¶¶ 13, 13.a).
- The Company's "Legal" website page states the WestRock Group is "comprised of the WestRock Company of 1000 Abernathy Road NE, Atlanta, GA 30328, USA, and all of its subsidiaries." FAC at 6 (¶ 13.b).
- Some of the Defendants share the same corporate addresses. FAC at 7 (¶¶ 15-16).
- Some of the Defendants share the same corporate officers. FAC at 7-8 (¶¶ 17-19).
- Some of the Defendants have the same or similar "type of business." FAC at 8 (¶ 20).

In her opposition, Plaintiff argues that the above-mentioned facts support her allegations that Defendants are "joint employers, an integrated enterprise, and alter egos." Plaintiff's Opposition to Motion ("Opp'n") at 3. The Court addresses below Plaintiff's arguments as to each of her theories of liability.

### 1. Joint Employers

The California Industrial Welfare Commission ("IWC") has provided a test to establish joint employers under California law. *See Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). In *Martinez*, the California Supreme Court held that "to employ," as used in California wage orders, means "(a)

4

to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.*

Plaintiff's alleged facts are far from sufficient to support a joint employment relationship under the *Martinez* test. At best, Plaintiff has alleged that Defendants are affiliated entities and the WestRock Company is the parent entity – facts that Defendants do no dispute – by alleging: (1) her employment documents referred to her employer as "WestRock" (a name all Defendants share); (2) Defendants are affiliated as the WestRock Group under WestRock Company; (3) some of the Defendants share corporate addresses and management. *See* FAC at 6-8 (¶¶ 13-20). None of these facts establish a plausible claim that any of the Non-Employing Defendants had any control over Plaintiff's wages, hours, and work conditions; allowed her to suffer or permit work; or engage her in any form. *See Martinez*, 49 Cal. 4th at 64.

Under the *Martinez* framework, "a common address does not suggest that a sibling corporation controls the employee's wages, hours, or working conditions; allows the employee to suffer work or permits him to work; or engages the employee, thereby creating a common law employment relationship." *Mata v. Manpower Inc.*, No. 14-CV-03787-LHK, 2016 WL 948997, at *10 (N.D. Cal. Mar. 14, 2016). Similarly, Plaintiff has provided no authority or analysis in support of her position that shared management renders one affiliate entity the joint employer of another affiliate entity's employees. *See id.* at *11. There are simply no facts alleged that if taken as true at this pleading stage, would establish that any of the Non-Employing Defendants: (1) exercised control over Plaintiff's wages, hours or working conditions, (2) had any authority to hire or terminate Plaintiff, or (3) engaged Plaintiff in an employment relationship. *See Martinez*, 49 Cal. 4th at 64.

"While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion." *Hibbs-Rines v. Seagate Techs.*, LLC., No. C 08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar. 2, 2009). Here, Plaintiff has alleged none. The Court finds specifically egregious Plaintiff's argument that a "joint employer" relationship has been sufficiently pled, while her FAC tells the Court almost nothing about any of the Defendants (*e.g.*, what type business are they in?) or even about Plaintiff (*e.g.*, what does she do?). Instead, Plaintiff baldly asserts that Defendants "are

5

an interwoven fiction of parent and subsidiary relationships." Opp'n at 5. This is insufficient.

In short, the FAC lacks sufficient facts to lead to a plausible inference that the non-Employing Defendants were joint employers of Plaintiff.

### 2. Integrated Enterprise

Federal courts in California apply the "integrated enterprise" test to claims arising from alleged violations of the California Labor Code where a plaintiff seeks to hold the parent corporation liable for California Labor Code violations. *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2018 WL 3760983, at *2 (N.D. Cal. Aug. 8, 2018). In these cases, in determining whether two entities are liable as an integrated enterprise courts consider four factors: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454, 460 (1998).

As relevant to these factors, Plaintiff's factual allegations, at best, lead to a plausible inference that Defendants share common management. But under the "integrated enterprise" test "common ownership or control alone is never enough to establish parent liability." *Laird*, 68 Cal. App. 4th at 738. "Although courts consider the four factors together, they often deem centralized control of labor relations the most important." *Id.* Plaintiff argues that facts alleged in the FAC "evidence centralized control of labor relations by and among the Defendants" because "[t]he parent company issued all policy documents signed by Plaintiff, and a subsidiary managed payroll." Opp'n at 7 (citing FAC at 6 (¶ 13)). This argument can most generously be described as a mischaracterization of the factual allegations in the FAC.

First, The FAC simply alleges that "[a]ll policy documents signed by [Plaintiff] refer to the employer as 'WestRock.'" *See* FAC at 6 (¶ 13). It is unclear which "WestRock" Defendant the FAC refers to, where all Defendants – including the one identified as Plaintiff's employer on her paystubs – has a name that includes "WestRock." Second, The FAC is devoid of any facts establishing who controls Plaintiff's work – whatever that work is – let alone support an inference that "centralized control of labor relations" existed among the Defendants. Third, the identification of WestRock Services, LLC as Plaintiff's employer on her paystubs (FAC at 6-7 (¶ 14)) leads to a

6

presumption that WestRock Services, LLC is her employer – not that WestRock Services, LLC is "a subsidiary manag[ing] payroll" as Plaintiff suggests. *See* Cal. Gov't Code § 12928; Opp'n at 5.

In sum, Plaintiff has failed to allege sufficient facts to support a claim based on integrated enterprise liability against the Non-Employing Defendants.[2]

### 3. Alter Ego

"It is well recognized that the law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities." *Pac. Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*, 19 Cal. App. 4th 615 (1993), *as modified on denial of reh'g* (Nov. 5, 1993). Under California law, "[a]lter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000). "To justify piercing the corporate veil on an alter ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must show that there is such a unity of interest and ownership between the two corporations that their separate personalities no longer exist, and that an inequitable result would follow if the parent were not held liable." *Laird*, 68 Cal. App. 4th at 742; *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. Mar. 28, 2014).

Courts consider nine factors in assessing whether the unity of interest prong of an alter ego relationship is satisfied:

> (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.

*Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2020 WL 1955652, at *13 (N.D. Cal. Apr. 23, 2020) (citation omitted). While a court need not find that every factor is present, *Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *10 (N.D. Cal. Mar. 7, 2018), in the Ninth Circuit "[t]otal ownership and shared management personnel are alone

---

[2] Defendants challenge the applicability of the "integrated enterprise" test to affiliate entities because this test is generally used in the context of parent-subsidiary relationships. Reply at 4-5. The Court need not resolve this issue at this juncture because Plaintiff's claims fail as to all Non-Employing Defendants.

insufficient to establish the requisite level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

Plaintiff's alter ego allegations are too conclusory to survive a motion to dismiss. In the FAC, Plaintiff makes the following conclusory and illogical allegation: "Each Defendant was completely dominated by his, her or its co-Defendant, and each was the alter ego of the other." FAC at 6 (¶ 12). As for her factual allegations, Plaintiff again relies on (1) unity in the onboarding process (FAC at 6 (¶ 13.a)); (2) WestRock Group includes WestRock Company and all of its subsidiaries (*id.* ¶ at 6 (13.b)); (3) some Defendants share the same address (*id.* at 6-7 (¶¶ 13-15)); and (4) some Defendants share corporate officers (*id.* at 7-8 (¶¶ 17-19)). Again, at best, Plaintiff has alleged that Defendants are affiliated and share common management. Plaintiff's allegation, accepted as true at the pleading stage, do not justify piercing the corporate veil under the alter ego theory. *Ranza*, 793 F.3d at 1073; *see also Park Miller*, 2020 WL 1955652, at *14 ("[T]otal ownership, shared office space and/or shared management personnel is not enough to show unity of interest.").

In her opposition, Plaintiff points to a declaration by Defendants' General Counsel and Assistant Secretary, Kevin A. Maxwell, (Defendant WestRock California, LLC's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 21) in which he states: "I am responsible for overseeing WestRock's legal entity management, which requires me to have knowledge of and be familiar with the corporate structure and business operations of WestRock's legal entities, including the other named defendants in this action." Opp'n at 10 (citing ECF 28-2 ¶ 1). According to Plaintiff, Mr. Maxwell's declaration "lends further weight" to Plaintiff's alter ego theory. *Id.* Defendants object to "Plaintiff relying on any evidence beyond what is contained in the four corners of Plaintiff's First Amended Complaint." Defendants' Reply in Support of Motion ("Reply") at 7, n.1. The Court agrees with Defendants and declines to consider Plaintiff's reliance on evidence outside of the pleadings and not subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Thus, Plaintiff has failed to state sufficient facts to support an inference of alter ego liability against the Non-Employing Defendants.

### 4. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

Plaintiff filed her original complaint on November 14, 2019, in California state court. ECF 1-1. Defendants removed the case to federal court and moved to dismiss. *See* ECF 1; ECF 15 (motion to dismiss under Fed. R. Civ. P. 12(b)(b)); ECF 19 (motion to dismiss under Fed. R. Civ. P. 21). After having an opportunity to review Defendants' motions to dismiss, Plaintiff timely amended her complaint. *See* FAC. The Court subsequently terminated Defendants' first set of motions to dismiss. ECF 26. Defendants then moved to dismiss the FAC.

In their first motion to dismiss, like in the present Motion, Defendants challenged the sufficiency of Plaintiff's allegations as to the liability of Defendants as employers. *See* ECF 15. Specifically, Defendants argued that Plaintiff had sued seven different entities without alleging facts "regarding joint employment or any relationship between Defendants that could support liability." *Id.* at 4. Defendants further noted the relevant authority regarding what it means to "employ" someone in California. *Id.* at 4-5 (citing *Martinez*, 49 Cal. 4th at 49). In her FAC Plaintiff attempted to cure the identified deficiencies. Importantly, Plaintiff acknowledged that WestRock Services, LLC is identified as her employer on her paystubs. *See* FAC at 6-7 (¶ 14). But Plaintiff's factual allegations as to the Non-Employing Defendants fall woefully short of what is required to state a plausible claim against any of the Non-Employing Defendants, as explained in this Order.

As to WestRock Company, the parent entity for WestRock Services, LLC (Plaintiff's presumptive employer), the Court finds that leave to amend is warranted because additional facts

may be alleged to support one or more of Plaintiff's theories of liability (*i.e.*, joint liability, integrated enterprises, or alter ego). Thus, Plaintiff's claims against WestRock Company are DISMISSED WITH LEAVE TO AMEND.

But Plaintiff's allegations as to the affiliate entities are too implausible to warrant leave to amend. Plaintiff had an opportunity to cure the defects in her complaint as to the affiliate entities and failed to add any factual allegations that could come close to stating a plausible claim of liability as to those entities – making further amendment a futile exercise and prejudicial to those Defendants who have now twice moved to dismiss Plaintiff's implausible claims against them. Accordingly, Plaintiff's claims against WestRock Consumer Packaging Group, LLC; WestRock MWV, LLC; WestRock California LLC; WestRock Cp, LLC; and WestRock Packaging Systems, LLC are DISMISSED WITHOUT LEAVE TO AMEND.

At the Hearing, the Court noted that it was inclined to grant leave to amend as to all Defendants. However, upon further reflection and careful review of the record, the Court now finds that any amendment as to the affiliate entities would be futile.

### B. Sufficiency of Plaintiff's Claims

Next Defendants argue that none of Plaintiff's causes of action are adequately pled. Motion at 7-11. The Court addresses each argument in turn below.

#### 1. Failure to Provide Meal and Rest Periods (First and Second Causes of Action)

Defendants move to dismiss Plaintiff's claims for denied meal and rest periods and argue that Plaintiff's allegations are "nothing more than legal conclusions," because "Plaintiff offers no substantive facts whatsoever regarding how Defendants required Plaintiff to work through her meal or rest breaks, let alone specific examples on when such allegedly occurred." Motion at 8.

Under California Labor Code Section 226.7, an employer is prohibited from requiring employees to work during a meal or rest period mandated by a wage order. Cal. Lab. Code § 226.7(a). An employer who fails to comply must pay an additional hour of pay for each workday that a meal or rest break is not provided. Cal. Lab. Code § 226.7(b). Pursuant to California's Industrial IWC Wage Order 4–2001, an employer is required to provide at least a thirty-minute meal

10

1  period per five-hour work period. Cal. Code Regs. Tit. 8, § 11040(11); *see also* Cal. Labor Code § 512.

Plaintiff alleges that she and the putative class members have been (and continue to be) "denied the opportunity to take full, uninterrupted, and timely meal periods." FAC at 11 (¶ 21). According to Plaintiff, Defendants maintain a common policy that non-exempt employees "may take meal breaks only at a designated time" and only with "permission from a manager or supervisor." *Id.* at 10 (¶ 17). Specifically, Plaintiff alleges that she and other putative class members were "required to relieve members of their team for meal breaks which often resulted in late meal breaks more than 5 or 6 hours after their scheduled start time." *Id.* at 11 (¶ 18). This was because "machines ran consistently 24 hours a day and were not shut off for meal breaks," resulting in late meal breaks after the fifth hour of work. *Id.* Further, Plaintiff alleges that Defendants "failed to maintain adequate staffing levels which resulted in [class members] clocking in and out for meal breaks after the fifth hour of work." *Id.* at 11 (¶ 19).

Defendants argue that Plaintiff's claim is insufficient under the standard set forth in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012). *See* Reply at 9. In *Brinker*, the California Supreme Court held that an employer complies with California labor laws and the applicable wage order if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so." *Id.* at 1040. But an employer "is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations[.]" *Id.* at 1040–41. Defendants argue that *Brinker* requires that Plaintiff "must allege how exactly the employer denied those meal and rest breaks." Reply at 9; *see also* Motion at 8 (citing *Brown v. Wal-Mart Stores, Inc.*, Case No. C 08-5221 SI, 2013 U.S. Dist. LEXIS 55930, at *13-14 (N.D. Cal. Apr. 18, 2013) (granting motion to dismiss where the plaintiffs alleged that the defendant pressured, incentivized, and discouraged the Drivers from taking lunch breaks, yet did not provide any facts surrounding these alleged tactics).

While not a model of clarity, the FAC describes *some* facts as to how Defendants allegedly

11

failed to relieve the employees of their duties for meal and rest breaks: employees were not allowed to take a break outside of designated times and without permission from a manager or supervisor; employers were required to relieve members of their team for meal breaks; and due to short staffing of the 24/7 operation, employees received late and interrupted breaks. FAC at 10-11 (¶¶ 17-19). Although these general allegations suggest that the Defendants may be liable for the misconduct alleged in the abstract, they fail to state a plausible claim that Plaintiff is entitled to relief for the allegedly illegal conduct. This is because "[n]owhere in the [FAC] does [Plaintiff] provide any factual information to suggest that [she] personally worked any shift that was long enough to trigger meal and rest break obligations." *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 940 (N.D. Cal. 2016). As they stand, the allegations in the FAC run afoul of the Ninth Circuit's decision in *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26, 2015), as discussed in more detail with respect to Plaintiff's third and fourth causes of action. *See e.g., Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, at *10 (N.D. Cal. Feb. 27, 2019) (applying *Landers* to meal and rest break claim); *Guerrero v. Halliburton Energy Servs., Inc.*, No. 1:16-CV-1300-LJO-JLT, 2016 WL 6494296, at *5-6 (E.D. Cal. Nov. 2, 2016) (same); *Reilly v. Recreational Equip., Inc.*, No. 18-CV-07385-LB, 2019 WL 1024960, at *5 (N.D. Cal. Mar. 4, 2019) (same).

Because Plaintiff could cure these deficiencies with amendment, Defendants' Motion to Dismiss Plaintiff's first and second causes of action is GRANTED WITH LEAVE TO AMEND.

### 2. Failure to Pay Overtime and Minimum Wages (Third and Fourth Causes of Action)

Defendants also move to dismiss Plaintiff's claims for unpaid overtime and minimum wage as conclusory. Motion at 7-8. Under California Labor Code § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194. Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage. Cal. Lab. Code § 1197. Further, California Labor Code § 1198

1    provides that "[t]he maximum hours of work and the standard conditions of labor fixed by the
2    commission shall be the maximum hours of work and the standard conditions of labor for
3    employees. The employment of any employee for longer hours than those fixed by the order or
4    under conditions of labor prohibited by the order is unlawful." Cal. Lab. Code § 1198.

Although Plaintiff recounts each of these statutes in the FAC, she does not plausibly state a claim that Defendants violated any of these provisions with respect to her or any of the putative class members.  This is because Plaintiff pleads ***no facts*** raising the inference that she or any of the class members worked more than 40 hours in a given week without being compensated for that time. The Court credits Plaintiff's allegation that Defendants failed to pay overtime at the correct rate and required or permitted Plaintiff and putative class members to work off the clock and during meal and rest breaks. FAC at 14 (¶ 34), 16 (¶¶ 43-44).  However, in *Landers*, the Ninth Circuit held that in order to state a plausible claim for failure to pay overtime or minimum wages, "at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek, or was not paid minimum wages." 771 F.3d at 646.

Although Plaintiff need not identify a calendar week or particular instance where she was denied overtime wages, she must ***plead facts*** giving rise to a plausible inference that such an instance actually occurred.  Plaintiff has not done so here.  Her bare assertions that Defendants "routinely failed to calculate overtime pay accurately" (FAC at 14 (¶ 34)) or required her and the putative class members "to finish work in progress while clocked-out for their meal breaks" (FAC at 16 (¶ 44)) are conclusory and insufficient under the standard set forth in *Landers*.  *See Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014) ("Under *Landers*, allegations such as those asserted in the FAC—that certain plaintiffs 'regularly' or 'regularly and consistently' worked more than 40 hours per week—fall short of the *Twombly*/*Iqbal* standard and are thus insufficient to state a claim for denial of overtime compensation.").

Plaintiff's claims also lack facts regarding "what period of time or type of conduct" she is counting as hours worked. *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016) (declining to conclude that plaintiffs' minimum wage or overtime claims were plausible without "basic facts," where there were "no allegations about what period of time or type of conduct

13

[p]laintiffs are counting as hours worked."). In fact, the FAC is devoid of any facts about what type of work Plaintiff does – let alone what conduct she is counting at overtime. Accordingly, Plaintiff's allegations "raise the possibility of undercompensation" but "a possibility is not the same as plausibility." *Landers*, 771 F.3d at 646 (internal quotations omitted); *see also Freeman v. Zillow, Inc.*, No. SA-CV-1401843, 2015 WL 5179511, at *4 (C.D. Cal. Mar. 19, 2015).

Thus, Defendants' Motion as to Plaintiff's claims for unpaid minimum wage and overtime is GRANTED WITH LEAVE TO AMEND.

### 3. Failure to Pay All Wages upon Termination (Fifth Cause of Action)

Defendants next move to dismiss Plaintiff's claim for failure to pay discharged and quitting employees at the time of discharge. Motion at 10-11. Plaintiff's fifth cause of action alleges that Defendants willfully failed to pay Plaintiff and the putative class members all of their accrued wages at the time of termination (or within 72 hours) and demands waiting time penalties pursuant to California Labor Code section 203 "as well as other available remedies." FAC at 18 (¶¶ 53-54).

Plaintiff brings this Claim under California Labor Code §§ 201, 202, and 203. Those statutes, in relevant parts, provide:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

Cal. Lab. Code § 201(a).

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

Cal. Lab. Code § 202(a).

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.

Defendants correctly note that Plaintiff may not bring a claim under these statutes because she lacks standing as a current employee (*i.e.*, not terminated). Motion at 10-11 (citing FAC at 4 (¶

14

3) ("Plaintiff is employed by Defendants as a non-exempt employee in Salinas, California from approximately February 11, 2019 to present.").

Section 201(a) refers to an employer's *discharge* of an employee, section 202(a) refers to an employee's *resignation*, and section 203 refers to an employee who is *discharged or who quits*. Because Plaintiff alleges that she remains employed by Defendants, she does not have valid claims under section 203. In other words, because Plaintiff has failed to properly allege violations of sections 201 and 202, she is not entitled to the penalties under section 203. *Pulido v. Coca-Cola Enterprises, Inc.*, No. EDCV06-406VAP(OPX), 2006 WL 1699328, at *3 (C.D. Cal. May 25, 2006).

Plaintiff responds that she may bring a claim under PAGA because she has alleged other violations of the California Labor Code that affect her directly. *See* Opp'n at 17-18. But this argument is irrelevant with respect to Defendants' challenge to Plaintiff's fifth cause of action where she seeks penalties under section 203 as an individual and class representative – not under PAGA.

And any amendment to this cause of action would be futile because Plaintiff is a current employee. Thus, the Court DISMISSES Plaintiff's claim for unpaid wages upon termination WITHOUT LEAVE TO AMEND.

### 4. Inaccurate Wage Statements (Sixth and Seventh Causes of Action)

Defendants seek to dismiss Plaintiff's claims for inaccurate wage statements to the extent they are derivative of her off-the-clock allegations. Motion at 9-10. In other words, Defendants argue that Plaintiff cannot state a claim for inaccurate wage as a matter of law, if those claims are predicated on her allegation that she worked off the clock and therefore her wage statements allegedly did not accurately reflect her total hours worked. *Id.* Defendants rely on *Maldonado v. Epsilon Plastics*, *Inc.*, 22 Cal. App. 5th 1308 (2018) for the proposition that "wage statements comply with section 226 when they reflect what an employee was actually paid, not what the employee claims should have been paid due to alleged off-the-clock work." Motion at 10.

First, Plaintiff responds that her claims for inaccurate wage statements are not "wholly derivative" of the other claims – but "a direct violation of California Labor Code section 226, as well." Opp'n at 16. Plaintiff then goes on to explain the alleged deficiencies in the wage statements – none of which appear in her FAC and thus cannot be considered in deciding this Motion. *See*

15

Opp'n at 16-17. In the FAC, the claims for inaccurate wage statements add no independent facts and rely solely on Plaintiff's other claims. *See* FAC at 18-20 (¶¶ 56-64). Accordingly, the Court concludes that the claims for wage statements in the FAC are derivative of Plaintiff's other claims – and thus they rise and fall with her wage and hour claims.

That said, the Court is not persuaded that "wholly derivative" claims for inaccurate wage statements fail as a matter of law. "Courts in this District have repeatedly found that section 226 claims are adequately pleaded even if they are derivative of other wage and hour claims." *Fodera v. Equinox Holdings, Inc.*, No. 19-CV-05072-WHO, 2020 WL 3961985, at *5 (N.D. Cal. July 13, 2020) (collecting cases). And *Maldonado* is distinguishable. In *Maldonado*, the plaintiffs argued that that the wage statement was inaccurate not because it did not include *all hours worked*, but because it did not correctly state the *rate of pay* for those hours. *Id.* at 1336. The *Maldonado* court found that plaintiff cannot maintain a claim under 226(a) based on additional wages allegedly owed to the plaintiff if the wage statement contains the accurate amount of hours worked. *See Maldonado*, 22 Cal. App. 5th at 1336-37. ("But only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wages earned* will be remedied by the violated wage and hour law itself, as is the case here."). In contrast, here, Plaintiff alleges an absence of actual hours worked (as well as inaccurate rates) on her wage statement. *See e.g.*, FAC at 20 (¶ 62) ("[T]he total hours worked for some pay periods does not accurately coincide with the hours on the time records.").

In conclusion, Defendants' Motion to Dismiss Plaintiff's inaccurate wage statement claims is GRANTED WITH LEAVE TO AMEND. Plaintiff also has LEAVE TO AMEND her inaccurate wage statement claims as to her non-derivative theory of liability.

### 5. Failure to Reimburse Business Expenses (Eighth Cause of Action)

Next, Defendants move to dismiss Plaintiff's claim for failure to reimburse employees for necessary business expenses.

California Labor Code § 2802(a) requires employers to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Cal. Lab. Code. §

16

2802(a). To recover under section 2802, an employee must show that "(i) [she] made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Marr v. Bank of Am.*, Case No. 09-cv-05978-WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011), *aff'd sub nom. Marr v. Bank of Am., NA*, 506 F. App'x 661 (9th Cir. 2013). In addition, the employer "must either know or have reason to know that the employee has incurred an expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009).

Plaintiff alleges that Defendants failed to reimburse Plaintiff and putative class members for business expenses "including but not limited to expenses for tools, steel toed boots, uniform-related expenses, usage of personal cell phones, and other employment-related expenses." FAC at 21 (¶ 67). Plaintiff further alleges that Plaintiff and other putative class members were required to wear "steel-toe work boots" and "buy tools" but fails to allege facts as to why these items were "reasonable and necessary" to perform their jobs or whether Defendants "knew or had reason to know" that the employees incurred those expenses. In fact, Plaintiff fails to even allege what her job functions are. The conclusory nature of Plaintiff's allegations is further evidenced by the fact Plaintiff seeks to represent all current and former non-exempt employees of all seven Defendants – making it extremely implausible that all these employees (regardless of their job functions) performed duties in which tools, steel toed boots, uniforms, and cell phones were necessary and reasonable.

Accordingly, the Court GRANTS Defendants' Motion to dismiss Plaintiff's claim for unreimbursed business expenses WITH LEAVE TO AMEND.

### 6. Unfair Competition (Ninth Cause of Action)

Defendants also seek dismissal of Plaintiff's Unfair Competition claims as derivative of other inadequately pled claims for unpaid wages, denied meal and rest periods, and unreimbursed business expenses. Motion at 9. Defendants argue that because liability on this claim "depend[s] upon and [is] only triggered upon Plaintiff proving liability on the underlying claims for alleged unpaid wages, denied meal and rest periods, and unreimbursed business expenses," this claim should

17

1   be dismissed as well. *Id.* (citing *Reilly v. Recreational Equip., Inc.*, No. 18-CV-07385-LB, 2019 WL 1024960, at *6 (N.D. Cal. Mar. 4, 2019) (dismissing derivative unfair competition claim because the underlying claims for alleged minimum-wage, overtime, meal-break, and rest-period claims were insufficiently pled)). Plaintiff does not respond to this argument. *See generally*, Opp'n.

The Court agrees with Defendants. Plaintiff's unfair competition claim relies on and is derivative of her minimum wage, overtime, meal/rest-period, and unreimbursed business expenses claims. Accordingly, Defendants' Motion to dismiss is GRANTED WITH LEAVE TO AMEND.

### 7. PAGA Penalties (Tenth Cause of Action)

Similarly, Defendants argue that Plaintiff's PAGA claim should be dismissed to the extent it is derivative of her other inadequately pled claims. *See* Motion at 2. Plaintiff responds by arguing that she has standing to bring a claim for PAGA penalties as to the alleged violations of sections 201, 202, and 203 of the Labor Code. Opp'n at 17-18. But Defendants do not challenge Plaintiff's standing as a PAGA representative – only that her claim for PAGA penalties fails to the extent that it is derivative of Plaintiff's other inadequately pled claims. *See* Reply at 2. Thus, there is no dispute that Plaintiff has standing to bring a PAGA claim as to all of the alleged violations of California Labor Code because she alleges that she is employed by Defendants and affected by "one or more" of the alleged violations – even if she was not personally injured by every alleged violation. *Huff v. Securitas Sec. Servs. USA, Inc.*, 23 Cal. App. 5th 745, 757 (2018).

That said, Plaintiff's PAGA claim does not add any factual allegations and is derivative of her Labor Code claims. FAC at 23-24 (¶¶ 77-81). Defendants' Motion to dismiss the PAGA claim is therefore GRANTED WITH LEAVE TO AMEND for the reasons discussed above regarding the underlying Labor Code violations the Court has now dismissed. *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Plaintiff also has LEAVE TO AMEND her PAGA claim (but not the substantive claim) for failure to pay all wages upon termination.

The Court reminds Plaintiff that her claims for Labor Code violations will be viable only to the extent that she can plausibly allege facts showing that she has personally suffered the alleged wrong. As presented, the FAC seems to be an attempt to impermissibly inflate the size of the class

and the reach to unrelated companies without adequate factual support.

**IV. ORDER**

For the foregoing reasons, Defendants' Motion to Dismiss at ECF 28 is:

- GRANTED as to Plaintiff's claims against WestRock Company and WestRock Services, LLC WITH LEAVE TO AMEND.
- GRANTED as to Plaintiff's claims against WestRock Consumer Packaging Group, LLC; WestRock MWV, LLC; WestRock California LLC; WestRock CP, LLC; and WestRock Packaging Systems, LLC WITHOUT LEAVE TO AMNED.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's first and second causes of action for failure to provide meal and rest periods.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's third and fourth causes of action for failure to pay overtime and minimum wages.
- GRANTED WITHOUT LEAVE TO AMEND as to Plaintiff's fifth cause of action for failure to pay all wages upon termination.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's sixth and seventh causes of action for inaccurate wage statements.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's eight cause of action for failure to reimburse business expenses.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's ninth cause of action for unfair competition.
- GRANTED WITH LEAVE TO AMEND as to Plaintiff's tenth cause of action for PAGA penalties.

Any amended complaint must be filed within 21 days of this Order. Plaintiff may only amend her claims and shall not add new claims or new parties without leave of Court. The Court requests that the chambers copy of any amended complaint be a redlined version, in color.

WestRock California LLC's Motion to Dismiss Pursuant to Fed. R. of Civ. P. 21 at ECF 29 is TERMINATED AS MOOT.

**IT IS SO ORDERED.**

Dated:  August 24, 2020

_____
BETH LABSON FREEMAN
United States District Judge