**MATERN LAW GROUP, PC**
Matthew J. Matern (SBN 159798)
matern@maternlawgroup.com
Julia Z. Wells (SBN 314242)
jwells@maternlawgroup.com
Sean P. Hardy (SBN 312987)
shardy@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, California 90266
Telephone: (310) 531-1900 / Facsimile: (310) 531-1901

Attorneys for PLAINTIFF ALICIA REYNA
individually, and on behalf of others similarly situated

[*Additional Counsel Listed on Next Page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| ALICIA REYNA, individually, and on behalf of others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>WESTROCK COMPANY, a corporation; WESTROCK SERVICES, LLC, a limited liability company,<br><br>Defendants.<br>_____<br>HUMBERTO CASTREJON, JR., on behalf of himself and other similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>WESTROCK SERVICES, LLC, a Georgia Limited Liability Company and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____ | Lead Case No. 5:20-cv-01666-BLF<br><br>Consolidated with Case No. 3:20-cv-06162-BLF<br><br>**MOTION FOR FINAL APPROVAL OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  April 24, 2024<br>Time:  9:00 a.m.<br>Ctrm:  3<br><br>*Reyna* Complaint: November 14, 2019<br>*Castrejon* Complaint: May 20, 2020<br>Consolidated Fourth Amended Complaint: August 25, 2022<br>Trial Date: Vacated |

**COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Diana M. Khoury (SBN 128643)
dkhoury@ckslaw.com
605 C Street, Suite 200
San Diego, California 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, II (SBN 146621)
sahagii@aol.com
18250 Ventura Blvd.
Tarzana, California 91356
Telephone: (818) 609-0807/Facsímile: (818) 609-0892

Attorneys for Plaintiff Humberto Castrejon, Jr.,
on behalf of himself and other similarly-situated employees

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

    A.  The Parties ............................................................................................. 2

    B.  Procedural History ................................................................................. 2

    C.  Discovery and Investigation .................................................................. 4

    D.  Mediation and Settlement Negotiations ................................................ 5

    E.  Preliminary Approval of the Settlement ............................................... 5

III.  SUMMARY OF SETTLEMENT ....................................................................... 6

    A.  Definition of the Class, FLSA Class Members, and PAGA Employees ............... 6

    B.  Settlement Terms ................................................................................... 6

        1.  Net Settlement Amount. ............................................................ 7

        2.  Individual Settlement Awards. .................................................. 7

        3.  FLSA Settlement Awards. ......................................................... 7

        4.  PAGA Payment. ........................................................................ 7

        5.  Class Representative Service Awards. ....................................... 8

        6.  Class Counsel Award. ................................................................ 8

        7.  Settlement Administration Costs. .............................................. 8

    C.  Released Claims .................................................................................... 8

IV.  CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23 ................. 9

V.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...................... 11

    A.  The Proposed Settlement is Presumed to be Fair. ................................. 12

    B.  Relevant Criteria Support Final Approval of the Settlement................. 13

        1.  Plaintiffs and Class Counsel Have Adequately Represented the Class. .............................................................................. 13

        2.  The Settlement Was Negotiated at Arm's Length. .................... 14

        3.  The Relief Provided to the Class Is Adequate. .......................... 15

            a.  Defendants' Maximum Potential Exposure and the Costs, Risks and Delay of Further Litigation. ............... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

             b.     The Effectiveness of the Proposed Method of Distributing Relief to the Class ...................................................... 17

       4.     The Settlement Does Not Provide Preferential Treatment to Plaintiffs or Any Segment of the Class. ...................................... 18

       5.     Class Members' Reaction to the Proposed Settlement. ............................. 19

    C.     The Proposed PAGA Allocation Is Fair, Adequate, and Reasonable, and Advances the Public Policy and Goals Underlying PAGA. .......................... 19

V.     CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcala v. Meyer Logistics, Inc.,*
2019 WL 4452961 (C.D. Cal. June 17, 2019)................................................................20

*Burns v. Elrod,*
757 F.2d 151 (7th Cir. 1985)..........................................................................................9

*Churchill Vill., LLC v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004)..........................................................................................9

*Deaver v. Compass Bank,*
2015 WL 4999953 (N.D. Cal. Aug. 21, 2015)...............................................................14

*Estrada v. Royalty Carpet Mills, Inc.,* 2024 Cal. LEXIS 12 (Jan. 18, 2024)..................16

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)..........................................................................11, 12, 17

*Harris v. Vector Mktg. Corp.,*
2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...............................................................14

*Harris v. Vector Mktg. Corp.,*
*No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)* ...................11, 12

*Hopson v. Hanesbrands, Inc.,*
2008 WL 3385452 (S.D. Cal. Apr. 13, 2009)................................................................20

*In re M.L. Stern Overtime Litig.,*
2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ................................................................20

*In re Pac. Enters. Sec. Litig.,*
47 F.3d 373 (9th Cir. 1995)......................................................................................12, 14

*In re Synocor ERISA Litig.,*
*516 F.3d 1095 (9th Cir. 2008)* ....................................................................................12

*In re Wireless Facilities, Inc. Sec. Litig. II,*
253 F.R.D. 607 (S.D. Cal. 2008)...................................................................................12

*Molski v. Gleich,*
318 F.3d 937 (9th Cir. 2003)..........................................................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................13, 19

*Officers for Justice v. Civil Serv. Comm'n,*
688 F.2d 615 (9th Cir. 1982)..........................................................................................11

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009)..........................................................................................17

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................................ 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................... 11, 13

*Viking River Cruises, Inc. v. Moriana*,
   ___ U.S. ___, 142 S.Ct. 1906 (2022) ....................................................................... 19

*Visceral v. Mistral Grp., Inc.*,
   2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................................................... 19

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. March 28, 2007) ......................................................... 13

*Zamora Jordan v. Nationstar Mortg., LLC*,
   2019 WL 1966112 (E.D. Wash. May 2, 2019) ........................................................... 18


**Statutes**

*Bayshore Transit Management, Inc.*,
   203 Cal.App.4th 1112 (2012) ................................................................................ 19

*Iskanian v. CLS Transp. Los Angeles, LLC*,
   59 Cal.4th 348 (2014) ........................................................................................... 19


**State Statutes**

Cal. Lab. Code § 2699(2) ........................................................................................... 19

**Federal Rules**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 9

Fed. R. Civ. P. 23(e) ................................................................................................ 11

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 9

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 11

Rule 23 of the Federal Rules of Civil Procedure ................................................. 9, 11

Rule 23(b)(3) ............................................................................................................ 9

Rule 23(c)(3) ............................................................................................................ 9

Rule 23(e)(3) ........................................................................................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On August 11, 2023, this Court entered an order granting preliminary approval of the proposed class-action settlement ("Settlement") between Plaintiffs Alicia Reyna ("Plaintiff Reyna") and Humberto Castrejon, Jr. ("Plaintiff Castrejon") (collectively, Plaintiffs") and Defendants WestRock Services, LLC and Westrock Company ("Defendants") (Declaration of Matthew J. Matern in Support of Plaintiffs' Motion for Final Approval of Class, Collective, and Representative Action Settlement ("Matern Decl.") ¶ 27) (Dkt. No. 120.) Plaintiffs now seek an order granting final approval of the proposed Settlement as memorialized in the Joint Stipulation of Class Action Settlement ("Stipulation") (Matern Decl. ¶ 23., Exh. A.)

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $5,500,000.00. The proposed Settlement will dispose of this action in its entirety as to the following Class:

> All hourly, non-exempt employees who are currently or have been employed by Defendants in the State of California at any time during the period from November 14, 2015 through September 8, 2021.[1]

The proposed Settlement will also dispose of claims arising under the FLSA related to claims alleged in this action for FLSA Class Members who submitted a valid FLSA Settlement Payment Opt-In Form. The FLSA Class Members are defined as:

> All hourly, non-exempt employees who are currently or have been employed by Defendants in the State of California at any time during the period from November 14, 2016 through September 8, 2021.[2]

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides substantial benefits to the Class Members when balanced with the strength of Plaintiffs' case and the risks and expense of further litigation. The fairness of the Settlement is confirmed by Class Members' overwhelmingly positive response to the Settlement. Specifically, there have been no objections to the Settlement and only 10 requests for exclusion, meaning that **99.51%** of Class Members are participating in the Settlement. Additionally, the Settlement was reached through

---

[1] Stipulation, ¶¶ 5, 7; Dkt. No. 120, ¶ 6.
[2] Stipulation, ¶¶ 16-17; Dkt. No. 120, ¶ 6.

1    arms-length negotiations with sufficient investigation and discovery that allowed Class Counsel

2    to act intelligently in litigating the case and reaching the Settlement. Class Counsel supports the

3    Settlement as being in the best interests of the Class Members. Accordingly, Plaintiffs

4    respectfully request that this Court grant Plaintiffs' Motion for Final Approval of Class Action

5    Settlement and enter final judgment thereon.

6    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7        **A.    The Parties**

8        Defendants WestRock Services, LLC and Westrock Company ("Defendants") are paper

9    and manufacturing companies which operate corrugated box facilities in California. (Matern Decl.,

10   ¶ 4.) Plaintiff Reyna was employed by Defendants in Salinas, California in various positions,

11   including as a run operator, from February 12, 2019 to September 10, 2020. (Declaration of Alicia

12   Reyna ["Reyna Decl."], ¶ 3.) Plaintiff Castrejon, was employed by Defendants in Salinas,

13   California as a roll clamp operator from approximately 2002 until the end of May 2019.

14   (Declaration of Humberto Castrejon Jr. ["Castrejon Decl."] ¶ 6.)

15       According to data provided by Defendants to the court-appointed Settlement

16   Administrator, ILYM Group, Inc. ("Settlement Administrator"), there are a total of 2,033 Class

17   Members. (Matern Decl., ¶32; Declaration of Nick Castro ["Castro Decl."], ¶ 5.)

18       **B.    Procedural History**

19       On August 29, 2019, Reyna provided written notice to the California Labor & Workforce

20   Development Agency ("LWDA") of her intent to seek civil penalties pursuant to Labor Code §§

21   2698, et seq. ("PAGA"). (Matern Decl., ¶ 6., Exh. B.) On September 16, 2019, Plaintiff Reyna

22   submitted an amended PAGA notice to the LWDA. (*Id.*, ¶ 7, Exh. C.) The LWDA did not indicate

23   it intended to investigate the claims against Defendants. (*Id.*, ¶¶ 6-7.)

24       On November 14, 2019, Reyna filed a putative wage and hour class and representative

25   action against Defendants entitled *Reyna v. WestRock Company, et al.* (Monterey County Superior

26   Court Case No. 19CV004600, "*Reyna* Action"), which alleged the following causes of action:

27   Failure to Provide Required Meal Periods; Failure to Provide Required Rest Periods; Failure to

28   Pay Overtime Wages; Failure to Pay Minimum Wages; Failure to Pay All Wages Due to

MOTION FOR FINAL APPROVAL
CASE NO 5:20-cv-01666-BLF

Discharged and Quitting Employees; Failure to Maintain Required Records; Failure to Furnish Accurate Itemized Wage Statements; Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties; Unfair and Unlawful Business Practices; and Penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"). (*Id.*, ¶ 8.) Defendants removed the *Reyna* Action to this Court on March 6, 2020. (*Id.*, ¶ 9.)

On March 28, 2023, Plaintiff Reyna filed a First Amended Complaint ("FAC"). (*Id.*, ¶ 10, Exh. D.) Defendants filed multiple motions to dismiss which Reyna opposed. The motions were granted in part and denied in part. (*Id.,* ¶ 11; Dkt. Nos. 15, 19, 28-29, 31-32, 52, 62, 66.)

On May 20, 2020, Plaintiff Castrejon filed a putative class and representative action complaint against Defendants entitled *Castrejon v. WestRock Services, LLC* (Sacramento County Superior Court Case No. 34-2020-00279027, "*Castrejon* Action"). (Matern Decl., ¶ 12; Declaration of Michael D. Singer ["Singer Decl."], ¶ 15.) Plaintiff Castrejon filed a first amended complaint on June 25, 2020. (*Id.*) Defendants later removed the Castrejon Action to the United States District Court for the Eastern District of California. (Matern Decl., ¶ 12; Singer Decl., ¶ 16.) The *Castrejon* Action was subsequently transferred to this Court, and was deemed related to the *Reyna* Action on September 25, 2020. (Matern Decl., ¶ 11; Singer Decl., ¶ 17; Dkt. No. 61.)

On March 19, 2021, the Parties stipulated to (a) consolidate the *Reyna* Action and the *Castrejon* Action; (b) allow Plaintiffs to file a Consolidated Third Amended Complaint ("CTAC"); and (c) stay discovery pending mediation. (Matern Decl., ¶ 13; Dkt. No. 71). On March 22, 2021, pursuant to the Parties' stipulation, the Court entered an order: (a) consolidating the *Reyna* Action and the *Castrejon* Action, with the *Reyna* Action designated as the lead case; (b) granting Plaintiffs leave to file the proposed CTAC; (c) granting Defendants fourteen days to file a responsive pleading; and (d) staying discovery pending mediation. (Matern Decl., ¶ 14; Dkt. No. 72.) On March 24, 2021, Plaintiffs filed a CTAC in the Reyna Action which included the claims asserted in both actions. (Matern Decl., ¶ 15; Dkt. No. 73.) Defendants filed an Answer to the CTAC on April 7, 2021. (*Id.*; Dkt. No. 74.)

On August 24, 2022, the Parties stipulated to the filing of a Consolidated Fourth Amended Complaint for Damages, Civil Penalties, and Restitution ("CFAC") which added a cause of action

under the Fair Labor Standards Act ("FLSA"). (*Id.*, ¶ 16; Dkt. No. 98). The CFAC alleges claims for: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay Wages Timely to Terminated Employees; (7) Failure to Maintain Required Records; (8) Failure to Indemnify Employees for Necessary Expenditures; (9) UCL Claim; (10)-(16) PAGA Claims; and (17) a FLSA Claim. (*Id.*) An order approving the stipulation was entered on August 25, 2022. (*Id.*; Dkt. No. 99.)

### C.     Discovery and Investigation

Prior to filing the initial complaints, Class Counsel conducted extensive research and investigation into Plaintiffs' claims and the anticipated defenses, and reviewed documents provided by Plaintiffs and other publicly available documents. (*Id.*, ¶ 17.) Prior to mediation, Defendants provided: (a) an approximately 20% sampling of Class Members' time and payroll records; (b) employee handbooks and relevant policy documents; (c) collective bargaining agreements ("CBAs"); (d) data regarding the putative class, including the total number of shifts worked, workweeks and pay periods, the total number of represented employees who worked during the Class Period as well as the PAGA Period, and damage information; and (e) samples of actual wage statements provided to employees during the Class Period. (*Id.,* ¶ 18.) Class Counsel retained the services of an expert data analyst whose analysis of the time and payroll data was instrumental in creating a damages model for the mediation. (*Id.*).

Based on the information developed through Plaintiffs' investigation and informal discovery, as well as Matern Law Group, PC's ("MLG") extensive knowledge of Defendants' business practices and policies garnered from litigating the action against Defendants' predecessor who was represented by the same counsel, *Wilson v. Rock-Tenn Company,* Los Angeles County Superior Court Case No. BC488456 ("*Rock-Tenn*") in which the Honorable Elihu M. Berle granted class certification, Class Counsel was able to act intelligently and effectively in negotiating the proposed settlement in this case. (*Id.*, ¶ 19.) The *Rock-Tenn* class action was litigated over five years and involved over forty in-state and out-of-state depositions, thousands of pages of documents, three mediations, a successful motion for class certification, and significant post-

MOTION FOR FINAL APPROVAL
CASE NO 5:20-cv-01666-BLF

certification trial preparation and thus furnished Class Counsel with an extensive and important knowledge base to litigate and settle this action. (*Id.*)

### D. Mediation and Settlement Negotiations

On June 8, 2021, the Parties attended a private mediation session with experienced mediator David Rotman, Esq. (*Id.*, ¶ 20; Singer Decl., ¶ 20.) The mediation resulted in a mediator's proposal which outlined the material terms of a proposed class action settlement that would fully resolve the litigation. (Matern Decl., ¶ 20.) The Parties accepted the mediator's proposal, subject to the Parties entering into a more comprehensive written settlement agreement. (*Id.*)

The settlement discussions during and after the mediation were conducted at arm's length, and the settlement was the result of an informed and detailed analysis of Defendants' potential liability and total exposure in relation to the costs and risks associated with continued litigation. The negotiations were conducted in a professional manner but were adversarial. negotiations were at arm's length and although conducted in a professional manner, were adversarial. (*Id.*, ¶ 21.) The Parties went into mediation willing to explore the potential for settlement, but were prepared to litigate their position through trial and appeal if a settlement had not been reached. The Settlement represents a resolution of disputed claims. (*Id.*, ¶ 22.)

Within the week following the Settlement, all Parties and their Counsel executed a Memorandum of Understanding. (*Id.*, ¶ 23.) The Stipulation was fully executed on July 18, 2022. (*Id.*).

### E. Preliminary Approval of the Settlement

On or about November 30, 2022, Plaintiffs filed their Motion for Preliminary Approval with this Court. (*Id.* ¶ 24; Dkt. No. 104.) A copy of the Motion for Preliminary Approval and the Settlement was submitted to the LWDA the same day. (*Id.* ¶ 24, Exh. E.) On April 13, 2023, Court denied the Motion for Preliminary Approval without prejudice, and instructed the Parties to submit a renewed motion for preliminary approval that satisfied the opt-in requirements of the Fair Labor Standards Act. (*Id.*, ¶ 25; Dkt. Nos. 109-110).

On or about July 6, 2023, Plaintiffs filed a Renewed Motion for Preliminary Approval, which added opt-in procedures for the FLSA Class, as instructed by the Court. (*Id.*, ¶ 26; Dkt. No.

116). On August 10, 2023, a hearing was held on the Renewed Motion for Preliminary Approval. (*Id.*, Dkt. No. 118). On August 11, 2023, the Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Stipulation of Class, Collective, and Representative Action Settlement. (*Id.*, Dkt. No. 120).

On or about December 13, 2023, pursuant to the stipulation of the Parties, the Court entered an order continuing the hearing date on Plaintiffs' Motion for Final Approval to April 25, 2024. (*Id.*, ¶ 27; Dkt. Nos. 121-122.) On or about March 15, 2024, the Court entered an order advancing the hearing date on Plaintiffs' Motion for Final Approval to April 24, 2024. (*Id.*, ¶ 28; Dkt. Nos. 123-124.)

## III.   SUMMARY OF SETTLEMENT

### A.   Definition of the Class, FLSA Class Members, and PAGA Employees

The proposed overall Settlement Class consists of all hourly, non-exempt employees who are currently or have been employed by Defendants in California at any time during the period from November 14, 2015 through September 8, 2021. (Stipulation, ¶ 5, 7; Dkt. No. 120, ¶ 6.)

The proposed Settlement also covers a sub-group of FLSA Class Members consisting of all hourly, non-exempt employees who are currently or have been employed by Defendants in California at any time during the period from November 14, 2016 through September 8, 2021. (Stipulation, ¶¶ 16-17; Dkt. No. 120, ¶ 6.)

Finally, the proposed Settlement provides payment of Individual PAGA Settlement Awards to PAGA Members consisting of those Class Members who worked for Defendants in the State of California at any time during the period from September 8, 2018 to September 8, 2021. (Stipulation, ¶¶ 27, 29.)

### B.   Settlement Terms

Under the proposed Settlement, the claims of all Class Members shall be settled for the Maximum Settlement Amount ("MSA") of $5,500,000.00, which shall be inclusive of all Individual Settlement Awards, Individual PAGA Settlement Awards, PAGA Payment to the LWDA, the Class Counsel Award, Settlement Administration Costs, and the Class Representative Service Awards. (Stipulation, ¶ 18.) The employer's share of payroll taxes will be paid by

Defendants in addition to the MSA. (Stipulation, ¶ 18.) No portion of the MSA will revert to Defendants or result in an unpaid residue. (Stipulation, ¶ 53.)

The MSA shall be allocated as follows:

1. <u>Net Settlement Amount</u>. The Net Settlement Amount is the MSA less the Class Counsel Award, Settlement Administration Costs, the Class Representative Service Awards, and the PAGA Payment. (Stipulation, ¶ 23.) The Net Settlement Amount, less the PAGA Payment allocated to PAGA Members (i.e., $62,500.00), shall be allocated as follows: 5% to the FLSA Class and 95% to the Class Members. (Stipulation, ¶ 23.)

2. <u>Individual Settlement Awards</u>. Participating Class Members will receive Individual Settlement Awards from the portion of the Net Settlement Amount allocated to the Class (i.e., 95% of the Net Settlement Amount less the PAGA Payment allocated to the PAGA Members). (Stipulation, ¶¶ 18, 20, 23; 52.a.vi.) Individual Settlement Awards will be calculated on a pro-rata basis according to the total number of Compensable Workweeks worked during the Class Period. (Stipulation, ¶¶ 9, 52.a.vi.)

3. <u>FLSA Settlement Awards</u>. In addition to Individual Settlement Awards to be paid to Participating Class Members, all FLSA Class Members who submitted a valid FLSA Settlement Payment Opt-In Form shall receive a FLSA Settlement Award consisting of a share of the portion of the Net Settlement Amount allocated to the FLSA Class (i.e., 95% of the Net Settlement Amount less the PAGA Payment allocated to the PAGA Members) (Stipulation, ¶¶ 23, 52.a.v.) FLSA Settlement Awards will be calculated on a pro-rata basis according to the total number of Compensable Workweeks worked during the FLSA Class Period. (Stipulation ¶52.a.v.)

4. <u>PAGA Payment</u>. Two Hundred and Fifty Thousand Dollars ($250,000) of the MSA will be allocated towards the satisfaction of the PAGA penalties. (Stipulation, ¶ 53.e.) 75% of this amount (i.e., $187,500.00) will be paid directly to the LWDA. (*Id.*) The remaining 25% (i.e., $62,500) will be distributed as Individual PAGA Settlement Awards to PAGA Members. (Stipulation, ¶¶ 23; 52.a.iii; 53.e.) Individual PAGA Settlement Awards shall be distributed to PAGA Members on a pro-rata basis according to the number of pay periods worked for Defendants during the PAGA Period. (Stipulation, ¶ 52.a.iii.)

5.    <u>Class Representative Service Awards</u>. Subject to Court approval, Plaintiffs shall receive a Class Representative Service Award in the amount of $10,000.00 for their time and effort in bringing and presenting the litigation and for releasing their claims. (Stipulation, ¶¶ 8, 53.c.)[3]

6.    <u>Class Counsel Award</u>. Subject to Court approval, Class Counsel shall receive up to one-third (1/3) of the MSA (i.e., $1,833,333.33) and reimbursement of costs in the amount of $23,450.60. (Stipulation, ¶¶ 3; 53.d.)[4]

7.    <u>Settlement Administration Costs</u>. Subject to court approval, the Settlement Administrator shall receive payment for Settlement Administration costs in the amount of $22,000.00. (Stipulation, ¶¶ 39; 53.e.; *see also* Castro Decl., ¶ 17.; Matern Decl. ¶ 46.)

The Individual Settlement Award and FLSA Settlement Awards shall be allocated as 20% as wages subject to all applicable tax withholdings, 40% as alleged unpaid interest and 40% as alleged civil and statutory penalties. (Stipulation, ¶ 53.b.ii.). 100% of the Individual PAGA Settlement Awards shall be allocated as civil penalties. (*Id.*) Settlement Award checks must be cashed within 180 days of issuance. (Stipulation, ¶ 53.b.iv.) Any amounts from Settlement Award checks that are not cashed within 180 days of issuance shall be sent to the State Controller's Office Unclaimed Property Division, along with the identity of the Participating Class Member to whom the funds belong. (*Id.*)

## C.    Released Claims

Upon the Effective Date, all Participating Class Members shall be deemed to have released the Released Parties from the Released Claims, as defined in the Stipulation. (Stipulation, ¶¶ 33, 36, 51.) In addition, FLSA Class Members who submitted a valid FLSA Settlement Payment Opt-In Form shall be deemed to have released the Released Parties from any claims under the FLSA

---

[3] Paragraph 53.c of the Stipulation was mistakenly misnumbered as 53.b. in the Stipulation. Subsequent provisions will be referred to by the correct paragraph numbers.

[4] Although the Stipulation allows for recovery of up to $25,000.00 in costs, Class Counsel's final costs are only $23,540.60. Thus, an additional $1,459.40 in savings will be included in the Net Settlement Amount. The request for Class Counsel's attorneys' fees and costs, as well as the Class Representative Service Awards, are fully addressed in Plaintiffs' separately-filed Motion for Attorneys' Fees and Costs and Class Representative Service Awards.

1   related to the claims that were maid or arise out of the facts arising asserted in the Action. (*Id.*)

2   PAGA Members and the State of California shall be deemed to have released the Released Parties

3   from the Released PAGA Claims, as defined in the Stipulation. (Stipulation, ¶¶ 34, 36, 51.)

4   Additionally, upon the Effective Date, Plaintiffs shall be deemed to have released the

5   Released Parties from Plaintiffs' Released Claims as defined in the Stipulation. (Stipulation, ¶¶ 35,

6   41.) Plaintiffs' Released Claims explicitly excludes claims alleged by Plaintiff Reyna in her

7   individual case against Defendants, *Reyna v. WestRock Company,* Monterey County Superior

8   Court Case No. 21CV000272. (Stipulation, ¶ 35.)

## IV.   CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH THE REQUIREMENTS OF DUE PROCESS AND RULE 23

11   Before the Court may grant final approval of a proposed class-action settlement, adequate

12   notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class

13   members should be given "the best notice practicable under the circumstances, including

14   individual notice to all members who can be identified through reasonable effort." Fed. R. Civ.

15   P. 23(c)(2)(B). The notice may be by United States mail or other appropriate means. *Id.* The

16   "best notice practicable" does not require receipt of actual notice by all class members in order

17   to comport with both Rule 23 and the requirements of due process, but it often includes (as in

18   this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns*

19   *v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

20   For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state

21   in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

22   certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

23   appearance through an attorney if the member so desires; (v) that the court will exclude from the

24   class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

25   and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ.

26   P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in

27   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

28   heard. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations and

1    quotations omitted).

2        The Settlement Administrator implemented the notice plan, as preliminarily approved by

3    the Court on March 17, 2022. (Stipulation, ¶ 52; *see also* Dkt. No. 120, ¶¶ 11-16, 21; Castro

4    Decl., ¶¶ 3-15.) Specifically, the Settlement Administrator received the Court approved text for

5    the Notice Packet approved by this Court on September 7, 2023. (Castro Decl., ¶ 4.) On or about

6    September 18, 2023, the Settlement Administrator received from Defendants a list containing

7    each Class Member's full name, last known address, Social Security number, employment dates,

8    number of Compensable Workweeks during the Class Period and FLSA Period, and number of

9    pay periods worked during the PAGA Period (collectively, "Class Data and Information"). (*Id*,

10    ¶ 5.) The Class Data and Information contained information for 2,033 Class Members. (*Id*.) After

11    receiving the Class Data and Information, the Settlement Administrator updated the Class Data

12    and Information after performing a search on National Change of Address database. (*Id*, ¶ 6.) On

13    December 22, 2023, the Notice Packets[5] were mailed to the Class Members by first-class U.S.

14    mail, with pre-paid postage. (*Id.*, ¶ 7.)

15        Of the 2,033 Notice Packets mailed by the Settlement Administrator, 143 Notice Packets

16    were returned as undeliverable without a forwarding address. (*Id.*, ¶ 8.) The Settlement

17    Administrator promptly attempted to locate a current mailing through a skip trace, and

18    successfully obtained 104 updated addresses. (*Id.*) The Settlement Administrator promptly re-

19    mailed the Notice Packets to the new addresses via first class mail. (*Id.* ¶ 9) As of the filing of

20    this Motion, 39 Notice Packets remain undeliverable as no updated address could be obtained

21    notwithstanding the skip tracing. (*Id.*, ¶ 10.)

22        As of the filing of this Motion, the Settlement Administrator has received zero (0) valid

23    disputes, zero (0) objections, and ten (10) requests for exclusion. (Matern Decl. ¶ 32; Castro

24    Decl., ¶¶ 11-13.) The Settlement Administrator has also received 340 FLSA Settlement Payment

25    Opt-In Forms from FLSA Class Members. (Matern Decl. ¶ 32; Castro Decl., ¶15.) Pursuant to

26

27

28

---

[5] The Notice Packets include the Court-approved Notice of Class Action Settlement, Information Sheet, Exclusion Form, and FLSA Settlement Payment Form (if applicable). *See* Stipulation, ¶¶ 6, 21, 24, Exh. 1-3; Dkt. No. 116-1; Dkt. No. 116-2; Dkt. No. 116-3; Dkt. No. 120, ¶ 11; *see also* Castro Decl., ¶ 7, Exh. A.

MOTION FOR FINAL APPROVAL
CASE NO 5:20-cv-01666-BLF

the Court's December 13, 2023 Order Re: Stipulation to Continue Hearing on Motion for Final Approval, the deadline for Class Members to submit objections, requests for exclusion, workweek disputes, and/or FLSA Settlement Payment Opt-In Forms was February 20, 2024. (Castro Decl., ¶ 11-13; Dkt. No. 122).

In short, the notice procedures undertaken by the Settlement Administrator constitute the best notice practicable under the circumstances, and fully comply with Rule 23 and the requirements of due process.

## V.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The settlement of a class action requires court approval. Fed. R. Civ. P. 23(e). In determining whether to grant final approval, the Court must determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2)(C); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To assess the merits of a final settlement in a class action, courts "balance a number of factors," including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court considers the "settlement taken as a whole." *See Hanlon*, 150 F.3d at 1026.

Although the Court has broad discretion in making a final determination that a class-action settlement is fair, the Court's discretion is "limited to the extent necessary to reach a reasoned judgment that the [settlement] is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. A presumption of fairness exists where "the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). In considering whether to grant final approval of a class-action settlement,

the Ninth Circuit has recognized "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litig.*, 516 F.3d 1095, 1011 (9th Cir. 2008). In the end, "[s]ettlement is the offspring of compromise; the question [that the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate[,] and free from collusion." *Hanlon*, 150 F.3d at 1027.

### A.    The Proposed Settlement is Presumed to be Fair.

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris*, 2011 WL 1627973, at *8 ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Settlement with the assistance of an experienced wage-and-hour mediator, David Rotman, on June 8, 2021. (Matern Decl. ¶ 20; Singer Decl. ¶ 20.) The Parties went into mediation willing to explore the potential for settlement, but were prepared to litigate their position through trial and appeal if a settlement had not been reached. (Matern Decl., ¶ 22.) After a full day of mediation, the Settlement was ultimately reached through issuance of a mediator's proposal which was accepted by all parties. (*Id.*, ¶ 20.) These circumstances are the antithesis of collusion and show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. (*Id.*, ¶ 21.)

Moreover, Plaintiffs and Class Counsel were able to make an informed decision regarding settlement, as Class Counsel conducted significant informal discovery and investigation prior to the mediation, and fully evaluated Defendants' potential exposure and risk associated with continued litigation. (*Id.*, ¶¶ 17-19, 33-39) Based on these considerations, Class Counsel supports the Settlement as fair, adequate, and reasonable, and in the best interests of the Class. (*Id.*, ¶¶ 40-41.)

**B.      Relevant Criteria Support Final Approval of the Settlement.**

In deciding whether to grant final approval of a class-action settlement, courts must determine whether it is "fair, reasonable, and adequate" after considering whether "(a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors are not exhaustive, however, and should be tailored to each case. *Staton*, 327 F.3d at 959; *see* Fed. R. Civ. P. 23(e)(2) 2018 advisory committee's note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Applied to this case, the relevant criteria support final approval of the proposed Settlement.

**1.      Plaintiffs and Class Counsel Have Adequately Represented the Class.**

Final approval is warranted because Plaintiffs and Class Counsel conducted an adequate investigation and discovery prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The greater the amount of discovery that has been completed, the more the parties have 'a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. March 28, 2007).

Plaintiffs conducted extensive investigation and informal discovery prior to mediation. Prior to the mediation, Defendants provided informal discovery to Class Counsel consisting of: (a) an approximately 20% sampling of Class Members' time and payroll records; (b) employee handbooks and relevant policy documents; (c) collective bargaining agreements ("CBAs"); (d) data regarding the putative class, including the total number of shifts worked, workweeks and pay periods, the total number of represented employees who worked during the Class Period as well as the PAGA Period, and damage information; and (e) samples of actual wage statements provided to represented employees during the Class Period. (Matern Decl., ¶ 18.) Class Counsel

retained the services of an expert statistician whose analysis of the time and payroll data was instrumental in creating a damages model for the mediation. (*Id.*)

Additionally, Class Counsel had extensive knowledge of Defendants' business practices and policies garnered from litigation of a prior class action against Defendants' predecessor who was represented by the same counsel, *Wilson v. Rock-Tenn Company,* Los Angeles County Superior Court Case No. BC488456 ("*Rock-Tenn*"). (*Id.,* ¶ 19.) *Rock-Tenn* was heavily litigated by MLG for over five years, and involved dozens of depositions, multiple mediations, a successful motion for class certification, and significant post-certification trial preparation. (*Id.*) This existing knowledge of Defendants' policies and practices, combined with the extensive informal discovery produced by Defendants, enabled Class Counsel to perform an informed evaluation of Plaintiffs' claims, and to act intelligently and effectively in negotiating the proposed Settlement. (*Id.*)

Additionally, Class Counsel was able to adequately represent the class in negotiating the Settlement as a result of Class Counsel's experience in handling similar class actions which, as noted above, includes extensive litigation against Defendants' predecessor. (*Id,* ¶¶ 19, 33-41; Singer Decl., ¶¶ 2-13.) Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378. Through their investigation, review of informal discovery, knowledge garnered from prior litigation experience against Defendants' predecessor, and the mediation, Class Counsel had an intimate understanding of the instant litigation, and believe that the Settlement is fair, adequate, and reasonable. (Matern Decl., ¶¶ 40-41; Singer Decl., ¶ 21.)

### 2. The Settlement Was Negotiated at Arm's Length.

An initial presumption of fairness exists where, as here, "the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). The use of an experienced mediator supports a finding that settlement negotiations were both informed and non-collusive. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007); *Deaver v. Compass*

*Bank*, 2015 WL 4999953, *7 (N.D. Cal. Aug. 21, 2015).

The Settlement was reached after a full-day mediation with an experienced wage and hour mediator. (Matern Decl., ¶ 20; Singer Decl., ¶ 20.) The settlement negotiations were at arm's length and although conducted in a professional manner, were adversarial. (Matern Decl., ¶ 21) The Parties went into mediation willing to explore the potential for settlement, but were prepared to litigate their position through trial and appeal if a settlement had not been reached. (*Id.,* ¶ 22) Moreover, as discussed above, Plaintiffs and Class Counsel were able to make an informed decision regarding settlement based on Class Counsel's extensive investigation, review of informal discovery, and knowledge garnered from prior litigation experience against Defendants' predecessor. (Mater Decl., ¶¶ 17-19; Singer Decl., ¶¶ 19-21.) Accordingly, this factor supports final approval of this Settlement.

### 3.        The Relief Provided to the Class Is Adequate.

The third factor considers whether the relief provided to the class is adequate, taking into account: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Here, Defendants will pay **$5,500,000.00** to resolve the action, which represents 14.6% of the *maximum* potential class-wide damages, exclusive of penalties and interest, that could be potentially recovered on behalf of the Class. (Matern Decl. ¶¶ 35.). This outcome will yield a sizeable average gross payment of **$1,573.69** to Participating Class Members, with the highest payment estimated to be **$4,512.37.** (Matern Decl., ¶ 39; Castro Decl., ¶ 16.) Additionally, FLSA Class Members who submitted valid FLSA Opt-In Forms will receive an average FLSA Settlement Award of $492.81, with the estimated lowest FSLA Settlement Award to be $15.44. (*Id.*) This is a substantial recovery which takes into consideration the significant risks of proceeding with the litigation. Accordingly, this factor favors final approval of the Settlement.

a.    <u>Defendants' Maximum Potential Exposure and the Costs, Risks and Delay of Further Litigation.</u>

In assessing the adequacy of the Settlement, Class Counsel carefully analyzed all available data and information, and calculated Defendants' maximum potential damages for Plaintiffs' class claims for unpaid wages to be $37,616,428.05. (Matern Decl., ¶ 33.) Class Counsel also separately calculated Defendants' maximum potential liability for statutory penalties to be $10,841,804.80 and civil penalties under PAGA to be $35,525,500.00. (*Id.,* ¶¶ 34-35.)

Although Defendants' maximum liability in this action is substantial, such calculations assume that Plaintiffs fully prevail on all causes of action at every stage of litigation, from class certification through trial and appeals. (*Id.*, ¶ 36.) While Plaintiffs and Class Counsel remain confident in the merits of the claims, they also recognized that there is significant risk and uncertainty associated with protracted litigation of this Action. (*Id.*)

In reaching the decision to settle the Action at this juncture in litigation, Plaintiffs and Class Counsel considered numerous factors, including: (a) the risk in obtaining class certification given that Defendants have multiple factories employing workers in different positions that allegedly have different wage and hour practices and policies; (b) some employees are subject to CBAs which raise preemption and other enforcement issues, arguably exempting recovery of overtime wages; (c) the burdens of proof necessary to establish liability; (d) the difficulty and risks associated with proving the amount of damages owed to each Class Member at trial; (e) the split in authority at the time of mediation over whether PAGA claims may be stricken based on manageability concerns[6]; (f) the likelihood that the Court would reduce the amount of PAGA penalties under Labor Code section 2699(e)(1), which authorizes a court to exercise discretion in assessing a civil penalty; (g) the evolving nature of the law in the class action and PAGA context; (h) the likelihood of success at trial; and (i) the near-certainty of an appeal in the event of a favorable judgment for Plaintiffs. (Matern Decl., ¶ 37.)

---

[6] Although the California Supreme Court recently resolved the split in holding that PAGA claims may not be stricken based on "manageability" concerns alone, it left often the possibility that an employer may still attempt to strike PAGA claims if it can be shown that "a trial court's use of case management techniques so abridged the defendant's right to present a defense that its right to due process was violated." *Estrada v. Royalty Carpet Mills, Inc.*, 2024 Cal. LEXIS 12 at *46 (Jan. 18, 2024). Thus, the possibility remains that Defendants could attempt to challenge Plaintiffs' PAGA claims as violating their due process rights.

MOTION FOR FINAL APPROVAL
CASE NO 5:20-cv-01666-BLF

1     Moreover, Class Counsel was cognizant that continued litigation would be expensive,

2  involving a lengthy trial and appeals, and would substantially delay and reduce any recovery by

3  the Class Members. (Matern Decl., ¶ 38.) While Plaintiffs and Class Counsel are confident in the

4  merits of the case, a legitimate controversy exists as to each cause of action. (*Id.*) Defendants

5  contest liability and are prepared to vigorously defend against Plaintiffs' claims if the case did not

6  settle. (*Id.*) Plaintiffs also recognize that, given the allegedly varying policies and procedures at

7  the different facilities in California, establishing liability and proving the amount of wages due to

8  each Class Member would be an expensive, time-consuming, and uncertain proposition. (*Id.,* ¶

9  37.) Indeed, the prior *Rock-Tenn* class action litigated against Defendants' predecessor and their

10  same counsel involved five years of litigation, over forty depositions, thousands of pages of

11  documents, three mediations, a successful motion for class certification, and significant post-

12  certification trial preparation. (*Id.*, ¶ 19.) Even if Plaintiffs fully prevailed at class certification and

13  obtained a favorable judgment a trial, an appeal would be a near-certainty. (*Id.*, ¶ 37.)

14     All of the foregoing risks, uncertainty, and delay are obviated by the proposed Settlement,

15  which ensures Class Members receive timely and meaningful monetary recovery without the risk

16  of an unfavorable judgment. (*Id.*, ¶ 39.) The fact that the Settlement will eliminate delay and

17  further expense weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d

18  948, 966 (9th Cir. 2009). Where, as here, the Parties face significant uncertainty, the attendant

19  risks also favor settlement. *Hanlon*, 150 F.3d at 1026.

20          b.   <u>The Effectiveness of the Proposed Method of Distributing Relief to</u>

21                <u>the Class</u>

22     The Stipulation provides a straightforward process for distributing the Net Settlement

23  Amount to Class Members. All Class Members who did not request to be excluded from the

24  Settlement will automatically receive an Individual Settlement Award from the portion of the Net

25  Settlement Amount allocated to the Class. (Stipulation, ¶¶ 52.a.vi, 53.) Individual PAGA

26  Settlement Awards will be sent to all PAGA Members, regardless of whether or not they requested

27  to be excluded from the settlement of the Class claims. (Stipulation, ¶ 52.a.ii.) Per this Court's

28  instructions at preliminary approval, Class Members who qualify as FLSA Class Members will

also receive an FLSA Settlement Award if they submitted an FLSA Settlement Payment Opt-In Form. (Stipulation, ¶¶ 52.a.v, 53; Dkt. 116-3; Dkt. 120, ¶ 11.)

Individual Settlement Payments and FLSA Settlement Awards will be distributed on a pro-rata basis according to the number of weeks worked during the Class Period and FLSA Class Period. (Stipulation, ¶ 52.a.v.-vi.). Similarly, Individual PAGA Settlement Awards will be distributed to on a pro-rata basis according to the number of pay periods worked during the PAGA Period. (Stipulation, ¶ 52.a.iii.)

Settlement checks will be negotiable for 180 calendar days from the date of mailing. (Stipulation, ¶53.b.iv.) After 180 days, the Settlement Administrator will distribute the value of any undeliverable or uncashed checks to the State Controller's Office Unclaimed Property Fund in the name of the Class Member, which will allow them to collect their respective Individual Settlement Payment at any time in the future. *Id*. Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class." *Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, *4 (E.D. Wash. May 2, 2019).

### 4. The Settlement Does Not Provide Preferential Treatment to Plaintiffs or Any Segment of the Class.

Under the fourth factor, the Court examines whether the proposed settlement provides preferential treatment to any class member. Here, the proposed Settlement poses no risk of unequal treatment of any Class Member, as each Participating Class Member's Individual Settlement Payment will be calculated based upon his or her Compensable Workweeks or Pay Periods. (Stipulation, ¶¶ 9, 52.a.iii., 52.a.v-vi.)

The Settlement also provides for Class Representative Service Awards to Plaintiffs up to $10,000 each. (Stipulation, ¶ 53.c.) As set forth in Plaintiffs' Motion for Attorneys' Fees and Costs and Class Representative Service Awards, these modest payments are appropriate based on the substantial risk assumed by and the services undertaken by Plaintiffs on behalf of the Class Members. (Reyna Decl., ¶¶ 4-15; Castrejon Decl., ¶¶ 2-3, 5, 7-10, 14; Matern Decl. ¶¶42-44; Singer Decl. ¶¶ 31-33.) Due to Plaintiffs' efforts and personal sacrifice, all Class Members can now benefit from a $5,500,000.00 settlement, with Settlement Awards of up to $4,512.37. (Castro

MOTION FOR FINAL APPROVAL
CASE NO 5:20-cv-01666-BLF

Decl., ¶ 16.) The proposed Class Representative Service Awards – which each constitute <u>less than 0.2% of the Maximum Settlement Amount</u>, are reasonable and deserved, and do not evidence any preferential treatment. (Matern Decl. ¶44.)

### 5. Class Members' Reaction to the Proposed Settlement.

In assessing the fairness, adequacy, and reasonableness of a proposed settlement, courts also consider the reaction of the class. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.

This factor also favors final approval. To date, there have been zero Class Members have objected to the Settlement. (Castro Decl., ¶ 12.) Additionally, only 10 Class Members (just .49% of the Class) have requested exclusion from the Settlement. (Castro Decl., ¶ 11; Matern Decl. ¶ 32.) Additionally, 340 FLSA Class Members submitted FLSA Settlement Payment Opt-In Forms. (Castro Decl., ¶ 15.; Matern Decl. ¶ 32.) Given the overwhelmingly positive reaction from Class Members, final approval of the Settlement is appropriate.

### C. The Proposed PAGA Allocation Is Fair, Adequate, and Reasonable, and Advances the Public Policy and Goals Underlying PAGA.

The settlement amount allocated for penalties under PAGA is fair, adequate, and reasonable. As a preliminary matter, courts have discretion to greatly reduce the amount awarded under PAGA. Cal. Lab. Code § 2699(2); *Thurgood v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012). This is particularly true where a plaintiff alleges both class claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.,* 2016 WL 5907869, *9 (N.D. Cal. Oct. 11, 2016).

Further, the fundamental purpose of PAGA is to ensure compliance with the California Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 379 (2014), abrogated on different grounds in *Viking River Cruises, Inc. v. Moriana,* 569 U.S. 639, 142 S.Ct. 1906 (2022). Where, as here, the parties reach a substantial settlement providing employees with monetary compensation for underlying Labor

Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiffs proved successful at trial. Additionally, PAGA's shorter statute of limitations justifies a limited allocation when compared to the amount allocated for Labor Code violations.

Here, the $250,000 PAGA allocation is well within the range approved by California courts and therefore should be approved. *Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, *9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25 percent of gross settlement amount was reasonable, as it "falls within the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v. Hanesbrands, Inc.*, 2008 WL 3385452, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3 percent).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant final approval of the Settlement and enter final judgment thereon.

DATED: March 21, 2024

**MATERN LAW GROUP, PC**

By:   */s/ Sean P. Hardy*
MATTHEW J. MATERN
JULIA Z. WELLS
SEAN P. HARDY
Attorneys for Plaintiff Alicia Reyna,
individually, and on behalf of all others
similarly situated

**COHELAN KHOURY & SINGER**
**LAW OFFICES OF SAHAG MAJARIAN II**

By:   */s/ Michael D. Singer*
MICHAEL D. SINGER
SAHAG MAJARIAN II
Attorneys for Plaintiff Humberto Castrejon,
Jr., individually, and on behalf of others
similarly situated